IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **06-cv-02351-JLK**

**HEALTH GRADES, INC., a Delaware corporation**,

       Plaintiff,

v.

**ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL, INC., a New Jersey
corporation,**

       Defendant.

_____

## ORDER ON MOTION TO DISMISS
_____

Kane, J.

      Plaintiff Health Grades, Inc. (Health Grades) asserts claims against Defendant Robert

Wood Johnson University Hospital, Inc. (RWJ) for copyright infringement, trademark

infringement and breach of contract arising from RWJ's unauthorized publication of Health

Grades ratings and awards for RWJ's healthcare services.  RWJ has moved to dismiss Health

Grades' complaint for failure to state a claim pursuant to Rule 12(b)(6).  Health Grades opposes

RWJ's motion and has filed an alternative Rule 56(f) motion seeking discovery in the event I

convert RWJ's 12(b)(6) motion into a motion for summary judgment.  For the reasons stated

below, I deny RWJ's motion to dismiss in part and grant it in part and deny Health Grades'

alternative Rule 56(f) motion as moot.

## **Background**

      For purposes of deciding RWJ's motion to dismiss, I assume the facts alleged by Health

Grades in its complaint are true.  According to these allegations, Health Grades is a Delaware

corporation based in Golden, Colorado.  It is in the business of developing and distributing

objective ratings of hospitals, physicians and other healthcare providers.  Its "1-3-5 Star" ratings

and provider awards are based on data and information obtained from a variety of sources, most

of which are publically available.  Health Grades determines its ratings and awards for individual

providers by analyzing these data using its own proprietary methodologies.

Health Grades publishes its ratings and awards for healthcare providers, along with other

information, on its website.  Health Grades has registered copyrights with respect to the

information contained at its website, including for its healthcare ratings and awards.  Health

Grades also owns and has registered the trademark "Health Grades" and a service mark

consisting of a check mark, oval and star design with the United States Patent and Trademark

Office.  All of these registrations are valid and were in full force and effect at all times relevant

to this action.

Members of the public may access and view the ratings, awards and other information on

Health Grades' website by executing a "click-through" Limited License and User Agreement

(Limited License) set out on the website.  The Limited License grants "a personal, revocable,

nonexclusive, non-transferable license to access and view this Site and the Site Materials, and to

copy, download, store and/or print only a single copy of any Site Materials, solely for your non-

commercial use and not for resale or distribution to anyone else."[1]  Complaint ¶ 7 (quoting

Limited License and User Agreement).  The Limited License also, among other things, notifies

site visitors entering into the agreement that the Site Materials are protected by international

copyright and trademark law and that any copying, reproduction, modification, adaptation,

---

[1]    The Limited License defines "Site Materials" as "the information, profiles, materials and other content available on or through" Health Grades' website.  Complaint, Exs. A & B, at 1.

translation or distribution of the materials on the site, including Health Grades' 1-3-5 Star rating system and methodology, beyond the limited, non-commercial license it grants is prohibited without Health Grades' prior written permission.

Health Grades enters into additional licensing agreements with healthcare providers that authorize them to use Health Grades' ratings, awards and other information to promote their healthcare services in return for payment of a licensing fee. These additional licensing agreements generate the revenue necessary to sustain Health Grades' business.

RWJ is a hospital located in Hamilton, New Jersey. From 2004 through 2006, RWJ, through its authorized employees, accessed the Health Grades website more than 200 times after entering into the required Limited License.[2] RWJ then proceeded to use materials from the Health Grades' website, specifically including Health Grades' name and the ratings and awards it had given RWJ, in at least nine press releases and articles promoting the hospital and/or its services. Health Grades' name and its ratings of and awards to RWJ were also published on the RWJ Hamilton website. RWJ did not have permission from Health Grades to use its name, ratings or awards in this manner.

In February 2005, Health Grades notified RWJ by letter that RWJ was infringing on Health Grades' copyrights and trademarks by using these materials in its advertisements and on the RWJ Hamilton website. Although RWJ represented in a subsequent letter that it would cease this conduct, it has continued to use Health Grades' materials.

---

[2]    RWJ entered into two different Limited License and User Agreements, one before May 25, 2006, and another after this date. *See* Complaint ¶ 5, Exs. A & B. These agreements are identical as relevant to the issues presented by this action and are therefore referred to collectively as "the Limited License."

On October 19, 2006, Health Grades filed this action against RWJ in Colorado state district court, asserting claims for copyright infringement, trademark infringement and breach of contract.  After RWJ removed the action to this court, it filed the subject motion to dismiss each of these claims.

**<u>Standard of Review</u>**

My function in deciding RWJ's 12(b)(6) motion to dismiss is to assess whether Health Grades' complaint is legally sufficient to state one or more claims for which relief may be granted.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).  In making this assessment, I accept all well-pleaded allegations of the complaint as true and view the allegations in the light most favorable to Health Grades, as the non-moving party.  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  I must deny the motion "unless it appears beyond doubt that [Health Grades] can prove no set of facts in support of [its] claims which would entitle [it] to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sutton*, 173 F.3d at 1236.

In addition to the complaint, I may consider documents referred to in the complaint if the documents are central to the plaintiffs' claims and the parties do not dispute the documents' authenticity.  *Jacobsen*, 287 F.3d at 941.  Under this rule, I may consider the Limited Licenses referenced in and attached to the complaint, as well as the articles and press releases referenced in paragraph 11 of the complaint that RWJ attached to its motion to dismiss.  I may not, however, consider or weigh any other potential evidence the parties might present at trial in deciding whether Health Grades has stated a claim.  *Id.*

4

### Discussion

RWJ seeks dismissal of each of Health Grades' claims, for copyright infringement, trademark infringement and breach of contract. Each claim is considered in turn below, as is Health Grades' alternative motion for discovery pursuant to Rule 56(f).

I.      Copyright Infringement

To prevail on its claim of copyright infringement, Health Grades must establish that: (1) it owns a valid copyright; and (2) RWJ copied protected components of Health Grades' copyrighted material. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831 (10th Cir. 1993). "Copied" in this context is a short-hand reference for any use of protected materials that infringes on the copyright holder's exclusive rights in these materials as set forth in the Copyright Act. *Gates*, 9 F.3d at 832 n.6. These exclusive rights include the right to reproduce the copyrighted work, to prepare derivative works based on it and to distribute copies of the work to the public. *See id.*; 17 U.S.C. § 106.

RWJ does not dispute that Health Grades has alleged facts that, taken as true, establish that Health Grades owns a valid copyright in its website. *See Gates*, 9 F.3d at 831-32 (certificate of registration is prima facie evidence of copyright validity). Nor does RWJ dispute that it copied components of this website when it reproduced and distributed Health Grades' ratings and awards in its promotional materials. RWJ asserts, however, that there is no circumstance under which Health Grades can prove that the specific components it copied, Health Grades' ratings and awards for RWJ, are protected under federal copyright law. If this is correct, then Health Grades' copyright infringement claim cannot stand.

RWJ first asserts Health Grades' ratings for RWJ's various services are not protected by copyright because they are facts. It is well-settled that "no author may copyright facts." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985); *see* 17 U.S.C. § 102(b). At the same time, it is equally well-settled that compilations of facts are within the subject of copyright. *Feist*, 499 U.S. at 345; 17 U.S.C. § 103. The viability of Health Grades' copyright infringement claim, therefore, turns initially on whether its ratings and awards, as described in the complaint, are unprotected facts or are protected factual compilations.[3]

The Supreme Court's decision in *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991), guides this analysis. In *Feist*, the Supreme Court considered whether the names, addresses and telephone numbers included in the white pages of a telephone directory were protected by copyright. To decide this question, the Court first discussed the reason that facts are not copyrightable. *Id.* at 345-48. This reason lies in the *sine qua non* of copyright, which is that the work is original to the author. *Id.* at 345, 348; *see* 17 U.S.C. § 102(a) (copyright protection extends only to "original works of authorship"). "Original," as used in copyright, "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Id.* Originality also "does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.*

---

[3]    There is currently little Tenth Circuit guidance for distinguishing between unprotected facts and protected factual compilations in a case such as this.

Facts, in and of themselves, are not copyrightable under these principles because they are not original to the author.  As the Supreme Court explained, "[t]he distinction is one between creation and discovery:  The first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence." *Id.* at 347.  In other words, "one who discovers a fact is not its 'maker' or 'originator,'" but rather one who "merely finds and records." *Id.*

An author who compiles facts to create an original work, on the other hand, receives copyright protection for the compilation.  *Id.* at 348; *see* 17 U.S.C. § 103 (identifying compilations as a work that may be copyrighted).  Under the Copyright Act, a protected factual compilation is "a work formed by the collection and assembling of pre-existing materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.  The compilation is deemed original and hence protected by copyright if the author has independently and with at least a minimal degree of creativity made choices as to "which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *Feist*, 499 U.S. at 348, 357-58.  Copyright protection extends, however, "only [to] the elements that owe their origin to the compiler - the selection, coordination, and arrangement of facts," and not to the facts included in or underlying the author's compilation, which remain unprotected. *Id.* at 359.  In *Feist*, the Supreme Court observed that most factual compilations display the

minimal level of creativity required to be deemed original and hence with the protection of copyright.[4]  *See id.* at 358-59.

According to its complaint, Health Grades' healthcare ratings for RWJ and other medical providers are a product of Health Grades' collection of data and information from a variety of sources, which it then analyzes and weighs using its own proprietary methodologies to produce a Health Grades' rating of 1, 3 or 5 stars and/or awards for each healthcare provider reviewed. These ratings and awards are not, therefore, facts "discovered" by Health Grades in the manner described in *Feist*, but rather are expressions created by Health Grades.  These ratings only exist because Health Grades has selected, weighed and arranged facts it has discovered to present the collected data in a form, Health Grades' ratings and awards for specific health care providers, that can be used more effectively by the reader to make judgments about providers.  Taking Health Grades' allegations as true, therefore, its healthcare provider ratings are independent creations by Health Grades and display at least the minimal degree of creativity necessary to be deemed original expressions.  As a result, Health Grades has sufficiently alleged that the ratings and awards copied by RWJ are original compilations of fact subject to copyright protection, rather than "discovered" facts outside the protection of copyright.[5]

---

[4]       In *Feist*, the Court ultimately held that the plaintiff's white pages fell within the narrow category of factual compilations not protected by copyright because the alphabetical arrangement of names in the work lacked any spark of creativity.  *Feist*, 499 U.S. at 362-63; *see id.* at 358-59.

[5]       Some commentators have criticized *Feist* and its "discovered" versus "created" test for identifying unprotected facts because the test does not recognize that many events and occurrences the Supreme Court and most other legal scholars would consider "discovered" and therefore unprotected "facts" are also the result of individual or collective human creation, *i.e.*, everything from street names to the dimensions of a building to who wrote or appeared in a particular play.  *See* Justin Hughes, *Created Facts and the Flawed Ontology of Copyright Law*,

This conclusion is supported by other relevant authority. In *CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.*, 44 F.3d 61 (2d Cir. 1994), the Second Circuit considered whether used car valuations published by defendant Maclean Hunter in its "Red Book" were unprotected facts or original factual compilations subject to copyright. The court held the valuations were protected because they were original creations of Maclean Hunter "based not only on a multitude of data sources, but also on professional judgment and expertise." *Id.* at 67. Protection of such original factual compilations, the court observed, "is consistent with the objectives of copyright law, which are, as dictated by the Constitution, to promote the advancement of knowledge and learning by giving authors economic incentives (in the form of exclusive rights to their creations) to labor on creative, knowledge-enriching works." *Id.* at 65.

Similarly, in *CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999), the Ninth Circuit held that the wholesale prices contained in plaintiff CDN's collectible coins guides were protected factual compilations because the plaintiff created these prices by "using their judgment to distill and extrapolate from factual data" collected from a variety of sources. *Id.* at 1260-61. The court contrasted this process with merely listing the factual data CDN relied upon in arriving at the estimated wholesale prices: "If CDN merely listed historical facts of actual transactions, the guides would be long, cumbersome, and of little use to anyone. Dealers looking through such

---

83 Notre Dame L. Rev. 43 (2007). Arguably, Health Grades' ratings and awards for healthcare providers are among these "created" or "social" facts because they were both "created" by Health Grade and subject to "discovery" by RWJ and others. The implications (if any) of this distinction in the copyright realm are far from clear, however, and have not been addressed directly by the parties here or by the courts as far as I can determine. Accordingly, the analysis above follows *Feist* in a straight-forward manner, leaving it to the Tenth Circuit or others to determine if something more than the Supreme Court's statements there should guide analysis of copyright's fact/expression dichotomy in this kind of case.

data would have had to use their own judgment and expertise to estimate the value of a coin. What CDN has done is use its own judgment and expertise in arriving at that value for the dealers. This process imbues the prices listed with sufficient creativity and originality to make them copyrightable."[6] *Id.* at 1261. *See also Applied Innovations, Inc. v. Regents of the Univ. of Minn.*, 876 F.2d 636 (8th Cir. 1989) (testing data resulting from discovered facts and application of standard methodologies that included adjustments based on authors' expertise and experience were original expressions protected by copyright).

Taking the allegations in Health Grades' complaint as true and drawing all reasonable inferences from them, Health Grades' ratings and awards for RWJ and other healthcare providers are similarly the product of a creative and original process that is informed by Health Grades' judgment and choices on what data to include and how to weight it. Health Grades' individual ratings and awards also advance learning by providing consumers with a more concise and accessible evaluation of these providers than the consumers could obtain by reviewing the

---

[6]     In spite of these authorities, RWJ asserts that the law provides no copyright protection to what it terms "invented facts" imbued with opinion. Def's Reply Mem. (Doc. 22) at 7-8. This position is not only unpersuasive in light of *Feist*, *CCC* and *CDN* as discussed above, it is not supported by either of the cases cited by RWJ. *See Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir. 1980) (holding that interpretations of historical events are not copyrightable as a matter of law, without reference to concept of "invented" facts); *Nester's Map & Guide Corp. v. Hagstrom Map Co.*, 796 F. Supp. 729, 733 (E.D.N.Y. 1992) (holding that taxi driver guide containing approximate rather than real street addresses for ease of use was sufficiently creative to be copyrightable). In fact, RWJ misstates the holding in *Nester* by reporting that it denied copyright protection to the approximate street addresses created by the plaintiff, when in fact the court found the approximate addresses were copyrightable.

underlying data sources themselves. Just as in *CCC* and *CDN*, therefore, Health Grades' ratings and awards are original factual compilations protected by copyright.[7]

RWJ next argues that even if Health Grades' ratings and awards are factual compilations and not unprotected facts, they are nonetheless excluded from copyright as a result of the merger doctrine. This doctrine arises from the rule that copyright protection extends only to the author's original expression, and not to the ideas embodied in that expression. *See Gates*, 9 F.3d at 836; 17 U.S.C. § 102(b). To enforce this rule, the courts deny copyright protection to expression "that is inseparable from or merged with the ideas, processes, or discoveries underlying the expression." *Gates*, 9 F.3d at 838. Applying the merger doctrine in this circumstance prevents courts from "unwittingly grant[ing] protection to an idea by granting exclusive rights to the only, or one of only a few, means of expressing that idea." *Id.*

RWJ contends that each of Health Grades' ratings and awards represent Health Grades' "idea" of what the rating for each health provider should be, which is merged with Health Grades' expression of that idea in its published ratings. I disagree.

As the Tenth Circuit has recognized, "[d]istinguishing between ideas and the expression of these ideas is not an easy endeavor, and . . . must necessarily be ad hoc." *Gates*, 9 F.3d

---

[7]    RWJ cites a footnote in the district court's decision in *New York Merchantile Exchange, Inc. v. Intercontinental Exchange, Inc.*, 389 F. Supp. 2d 527 (S.D.N.Y. 2005), for the proposition that it would be an "unsupportable extension of copyright" to hold, based on *CCC* and *CDN*, that Health Grades' individual rankings are copyrightable. *See* Def.'s Reply Mem. (Doc. 22) at 7 (quoting *NYMEX*, 389 F. Supp. 2d at 542 n.11). Neither RWJ nor the *NYMEX* district court provide any basis for this conclusion, however. It is also noteworthy that the Second Circuit did not endorse this view in affirming the district court's decision, and instead declared that the question of whether the particular compilation before it, NYMEX's settlement prices for individual futures contracts, were original expressions was too close to decide on summary judgment. *See NYMEX*, 497 F.3d 109, 114 (2d Cir. 2007).

at 836; *see Country Kids 'n City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1285 (10th Cir. 1996).  The

difference between idea and expression is one of degree, and "the guiding consideration in

drawing this line is the preservation of the balance between competition and protection"

reflected in copyright law.  *CDN*, 197 F.3d at 1262 (internal quotation omitted).  This reflects the

"delicate equilibrium" copyright law seeks to establish:  "On the one hand, it affords protection

to authors as an incentive to create, and, on the other, it must appropriately limit the extent of

that protection so as to avoid the effects of monopolistic stagnation."  *Computer Assoc. Int'l, Inc.*

*v. Altai, Inc.*, 982 F.2d 693, 696 (2d Cir. 1992); *see Country Kids*, 77 F.3d at 1285 (in

distinguishing between ideas and expression, court must remember "that copyright law seeks to

achieve a proper balance between competition based on public ideas and incentive to produce

original work.").  Thus, the line for determining when an idea "has become sufficiently

delineated to warrant copyright protection . . . is a pragmatic one, drawn not on the basis of some

metaphysical property of 'ideas,' but by balancing the need to protect the labors of authors with

the desire to assure free access to ideas."  4 Melvin B. Nimmer & David Nimmer, Nimmer on

Copyright [hereinafter "Nimmer"] § 13.03[F][1] at 13-132 to -133 (2008).

In this case, balancing these competing goals and principles in light of the allegations in

the complaint, I find that Health Grades' healthcare provider rankings are not removed from

copyright protection under the merger doctrine.  The relevant idea to be preserved for free public

access and use under these principles is that of creating rankings of healthcare providers, rather

than Health Grades' specific "idea" of how a particular health care provider should be ranked.[8]

---

[8]     RWJ's suggestion that Health Grades' ratings are both the idea and expression of
this idea is at one extreme of the "continuum of generality" that may be used to describe any
original work.  *See Nash v. CBS, Inc.*, 899 F.2d 1537, 1540 (7th Cir. 1990).  As Judge Learned

There are a multitude of ways to express the idea of ranking healthcare providers, as a comparison of providers may rely on different factual information or weigh it differently and thus may yield different results. This is not a situation, therefore, "where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991).

The line I have drawn between the idea of creating a ranking of healthcare providers and Health Grades' expression of that idea through the particular rankings it has created preserves the balance between competition and protection: it furthers competition by allowing Health Grades' competitors to create their own rankings of healthcare providers while also protecting Health Grades' creation, thus giving it an incentive to create its ratings and awards. *See CDN*, 197 F.3d at 1262. The interest in free public access to ideas is also not seriously harmed by granting copyright protection to Health Grades' healthcare provider rankings, *see CCC*, 44 F.3d at 70-73 (public interest in free access to ideas "infused with the author's taste or opinion" is weak as compared to ideas that advance understanding of phenomena and solutions to

---

Hand famously observed: "Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. . . . [T]here is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his 'ideas,' to which, apart from their expression, his property is never extended." *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) (quoted in *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1492 (10th Cir. 1993)). RWJ's argument presents the opposite end of this spectrum, as it identifies the relevant pattern or "idea" as Health Grades' specific, fully delineated expression. As described above, this level of abstraction is too low to tip the balance from protected expression to unprotected idea. In fact, if accepted, RWJ's position would deprive most factual compilations of copyright protection, *see CCC*, 44 F.3d at 70 (noting that every compilation represents an idea that can only be conveyed accurately by its expression); *CDN*, 197 F.3d at 1261 (same), a result that is contrary to the protection conferred on compilations by the Copyright Act. *See* 17 U.S.C. § 103.

problems), and in any event does not outweigh the interest in preserving the incentives copyright

provide to entities to compile original rankings of healthcare providers. Without the financial

incentive, *e.g.*, exclusive rights, to create their own proprietary healthcare rankings, Health

Grades and others in this field might "direct their energies elsewhere, depriving the public of

their creations and impeding the advance of learning."[9] *CCC*, 44 F.3d at 66. This result would

not serve the fundamental purpose of copyright, which is "[t]o promote the Progress of Science

and useful Arts" by providing incentives for creative work that will benefit the public. *See*

U.S. Const. art. I, § 8, cl. 8; *Mazer v. Stein*, 347 U.S. 201, 219 (1954); *see generally* 1 Nimmer

§ 1.03[A]. As a result, at this stage of litigation, there is no basis for me to find that the merger

doctrine bars copyright protection of Health Grades' ratings and awards.

Finally, RWJ argues that copyright protection must be denied to Health Grades' rankings

of RWJ's services because the titles of Health Grades' ratings and awards, such as "five stars"

and "clinical excellence," are short titles or phrases. It is true that the copyright protection does

not extend to fragmentary words or short phrases that lack the minimal level of creativity

necessary to warrant copyright protection. *See* 1 Nimmer § 2.01[B] at 2-15 to -17*; CMM Cable*

*Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519-20 (1st Cir. 1996); *Magic Mktg.,*

---

[9]     This consideration distinguishes this case from *NYMEX*, in which the Second
Circuit applied the merger doctrine to bar copyright protection after determining that no
incentives were necessary for NYMEX to generate the settlement prices it sought to protect by
copyright. *See* 497 F.3d at 118. The Second Circuit also based its application of the merger
doctrine in that case on its conclusion that the range of possible settlement prices, calculated
from underlying factual data, would be "exceptionally narrow," so that the idea of determining
these prices was, in fact, merged with its expression. *See id.* at 117-18. No such conclusion can
be reached in this case based on Health Grades' allegations and the reasonable inferences that
can be drawn from them.

*Inc. v. Mailing Servs. of Pittsburg, Inc.*, 634 F. Supp. 769, 772-73 (W.D. Pa. 1986).[10]  Health

Grades has not, however, asserted copyright infringement based on RWJ's copying of only these

short titles or phrases, but rather on its copying of five star ratings and clinical excellence

designations specifically attributed to Health Grades that are the product of Health Grades'

rating and award system.  For the reasons described earlier, these ratings and awards, which

include the reference to Health Grades, are sufficiently original compilations of fact to be subject

to copyright.  This is so even if the statement of an individual Health Grades rating or award can

be described as a short phrase.

RWJ contends, however, that short phrases, even those that are original expressions

otherwise subject to copyright, are not entitled to copyright protection as a matter of law.  RWJ

bases this argument on a long-standing regulation of the United States Copyright Office stating

"[t]he following are examples of works not subject to copyright . . . words and short phrases such

as names, titles, and slogans."  37 C.F.R. § 202.1(a).  It also relies on a Copyright Office circular

to the same effect.  *See* Def.'s Reply Mem. (Doc. 22), Ex. A (United States Copyright Office,

Circular 34, *Copyright Protection Not Available for Names, Titles, or Short Phrases* (2006)).

The Tenth Circuit has not had an opportunity to consider the Copyright Office regulation

and whether it creates the absolute rule advocated by RWJ.  Having reviewed this regulation and

other relevant authority, I concur with Judge Roth of the Third Circuit that the proper view of the

---

[10]    Courts have, for example, found phrases such as "TELEGRAM," "GIFT
CHECK," and "PRIORITY MESSAGE" to be insufficiently creative to be copyrightable, *see
Magic Mktg.*, 634 F. Supp. at 773, as well as the phrases "if you're still 'on the clock' at quitting
time" and "clock in and make $50 an hour."  *CMM Cable*, 97 F.3d at 1520 (finding these phrases
lacked the minimal originality required for copyright because they involved "cliched" language"
typically used to convey the idea of employment).

regulation is that it is only "a rough starting point for an originality analysis, not a shortcut for avoiding this analysis. Short phrases are typically unprotectable because they are either insufficiently independent or insufficiently creative or both." *Southco, Inc. v. Kanebridge Corp. ("Southco III")*, 390 F.3d 276, 298 (3d Cir. 2004) (Roth, J. dissenting). Accordingly, "it does not make sense to state categorically that no combination of numbers or words short enough to be deemed a 'phrase' can possess 'at least some minimal degree of creativity'" as required for copyright protection under *Feist*. *Id.* I also find Judge Roth's further analysis of the scope and application of this regulation persuasive, *see id.* at 298-300, and note with her the paucity of cases holding that an otherwise original expression is uncopyrightable solely because it can be described as a short phrase. In the absence of Supreme Court or Tenth Circuit authority on this issue, I am persuaded by Judge Roth that the Copyright Office's regulation does not strip copyright protection from such original expressions.[11]

For all of the reasons stated above, I find Health Grades has alleged sufficient facts to state a claim for copyright infringement.[12]

---

[11]    I recognize that Judge Roth's views did not prevail in *Southco III*, but also note that five of the thirteen judges on the *en banc* panel in that case joined her dissent on this point. *See* 390 F.3d at 297-300, 289-90. The *Southco III* majority also did not rely solely on the Copyright Office regulation in finding the product numbers before it uncopyrightable, but rather found that these numbers were also unprotected because they were insufficiently creative to be original expressions. *See* 390 F.3d at 281-87.

[12]    In so holding, I do not address the issue, mentioned by RWJ in its reply brief and addressed by Health Grades in its sur-reply, of whether RWJ's copying of Health Grades' rankings and awards may be permitted under the affirmative defense of fair use. This issue cannot be decided based solely on the allegations in the complaint.

II.    **Trademark Infringement**

In its Second Claim for Relief, Health Grades alleges RWJ has infringed and continues to infringe on its federally registered "Health Grades" trademark and registered service mark by using them to advertise its hospital services without Health Grades' authorization.  RWJ moves to dismiss this claim on the ground that its alleged use of these marks, as a matter of a law, is a nominative fair use permitted by the Lanham Act.

The Lanham Act prohibits the unauthorized use or misleading representation of "any word, term, name, symbol, or device" in a way that "is likely to cause confusion, or to cause mistake, or to deceive" in connection with any good or service.  15 U.S.C. § 1125(a)(1)(A).  "Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers" or "when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product."  *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1138 (10th Cir. 2008) (internal quotations omitted).  Whether the use of a mark will result in likelihood of confusion within the meaning of the Lanham Act is a question of fact.  *Id*.

To determine whether a likelihood of confusion exists in a trademark infringement case, courts traditionally engage in a multi-factor analysis.  In the Tenth Circuit, the following non-exhaustive factors are considered:  "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks."  *Id.* (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002)).  No one of these factors is dispositive, and

17

"the final determination of likelihood of confusion must be based on consideration of all relevant factors." *Id.* (internal quotations omitted). In all cases "[t]he party alleging infringement has the burden of proving likelihood of confusion." *Id.* (internal quotation omitted); *see KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004).

The Ninth Circuit has devised a different method for analyzing the likelihood of confusion arising from certain uses of a trade or service mark. The Ninth Circuit applies this alternate analysis in situations in which "a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis omitted); *see New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Examples of such usage include a car repair shop advertising that it fixes Volkswagen cars, even though "Volkswagen" is a registered trademark, *see Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir.1969), or an imitator of brand name perfumes advertising that its perfume is indistinguishable from the trademarked "Chanel # 5" perfume, *Smith v. Chanel, Inc.*, 402 F.2d 562 (9th Cir.1968). *See New Kids*, 971 F.2d at 307-08 (citing these cases as examples).

In these situations, the Ninth Circuit examines the allegedly infringing use of the plaintiff's mark to determine if it constitutes what the Ninth Circuit calls "nominative fair use." *See New Kids*, 971 F.2d at 307-08. The court holds a "nominative fair use" exists and does not infringe on the plaintiff's mark if, among other things, "the [defendant's] use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *Id.* at 308. In other words, the Ninth Circuit considers a "nominative fair use" to be non-infringing because it is not likely to confuse consumers. *See id.* at 307-08;

18

*Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 & n.5 (9th Cir. 2003); *see also Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 545 (5th Cir. 1998) (nominative fair use creates no likelihood of confusion); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition [hereinafter "McCarthy"] § 23:11 (2008) (same).

In considering the Ninth Circuit's "nominative fair use" doctrine, it is important to distinguish it from the "fair use" defense set forth in section 1115(b)(4) of the Lanham Act. This statutory defense, sometimes referred to as "classic fair use," *see New Kids*, 971 F.2d at 308, provides that no infringement occurs when a defendant uses the plaintiff's trademarked terms or images descriptively, not as a mark, fairly and in good faith. *See* 15 U.S.C. § 1115(b)(4); *KP*, 543 U.S. at 124. This defense is one of the safeguards in the Lanham Act against persons monopolizing the use of descriptive words by including them in their trademark. *See KP*, 543 U.S. at 122; *New Kids*, 971 F.2d at 306 (purpose of statutory fair use defense is to prevent trademark registrants from appropriating descriptive terms for their exclusive use). The statutory fair use defense is a true affirmative defense, as it allows a defendant to avoid liability even where the plaintiff has proved likelihood of confusion and the other elements of a prima facie case of infringement. *See KP*, 543 U.S. at 124.

The Ninth Circuit's nominative fair use analysis, on the other hand, merely replaces the multi-factor analysis utilized in most cases to assess the likelihood of confusion element of a plaintiff's infringement claim with a different, three-part test that the Ninth Circuit believes is better suited to cases in which nominative fair use is asserted.[13]  *See Cairn*s, 292 F.3d at 1151;

---

[13]    A number of courts have conflated the statutory fair use defense with the Ninth Circuit's separate, judicially-created and labeled "nominative fair use" doctrine, which has led to significant confusion in the case law regarding the scope and application of the distinct

*Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002); 4 McCarthy § 23:11.  Under

this test, the Ninth Circuit finds a non-infringing, nominative fair use if the following three

requirements are met:  "[1] the product or services in question must be one not readily

identifiable without use of the trademark; [2] only so much of the mark or marks may be used as

is reasonably necessary to identify the product or service; and [3] the user must do nothing that

would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark

holder."  *New Kids*, 971 F.2d at 308.

 The Ninth Circuit's "nominative fair use" analysis has not been widely adopted.  In fact,

all of the circuit courts that have considered it to date have either rejected the Ninth Circuit's

approach outright, *see PACCAR Inc. v. TeleScan Technologies, LLC*, 319 F.3d 243, 256 (6th Cir.

2003) (rejecting nominative fair use analysis as substitute for traditional multi-factor analysis of

likelihood of confusion), or modified it in some fashion to allow likelihood of confusion to be

determined based largely on the traditional multi-factor analysis of this element, *see Pebble

Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546-47 (5th Cir. 1998) (nominative use claim usually

considered in conjunction with, rather than as a substitute for, the traditional likelihood-of-

confusion analysis); *Century 21 Real Estate Corp. v. Lending Tree, Inc.*, 425 F.3d 211, 220-22

---

nominative fair use doctrine.  For example, in both *Century 21 Real Estate Corp. v. Lending
Tree, Inc.*, 425 F.3d 211 (3d Cir. 2005), and *Ty, Inc. v. Publications International, Ltd.*,
2005 WL 464688 (N.D. Ill. Feb. 25, 2005), the courts relied on the Supreme Court's holding in
*KP Permanent Make-Up* that the affirmative defense of statutory fair use is available when
likelihood of confusion exists, *see* 543 U.S. at 121-22, to hold that nominative fair use can also
exist even if the use is likely to cause confusion.  *See Century 21*, 425 F.3d at 222-23 & n.3; *Ty*,
2005 WL 464688, at *6-7.  This is contrary to the very definition of the Ninth Circuit's
nominative fair use doctrine, which is a use that does *not* carry with it a likelihood of confusion
and therefore does not infringe on the mark.  *See, e.g.*, *Brother Records*, 318 F.3d at 909 & n.5;
*New Kids*, 971 F.2d at 307-08; *see also* 4 McCarthy § 23:11 (distinguishing between statutory
and nominative "fair use" on this and other bases).

(3d Cir. 2005) (likelihood of confusion in nominative fair use cases analyzed under modified version of traditional test, with nominative fair use considered as an affirmative defense); *id.* at 246-50 (Fisher, J. dissenting) (criticizing majority for construing nominative fair use as an affirmative defense and proposing instead that Ninth Circuit's nominative use factors be incorporated in slightly modified version of traditional likelihood of confusion analysis). Commentators have also noted that other courts have used the traditional multi-factor likelihood of confusion analysis in "nominative fair use" situations to reach results consistent with those achieved under the Ninth Circuit's alternate three-part test. *See* 4 McCarthy § 23:11 (citing cases).

  The nominative fair use doctrine as stated and applied by the Ninth Circuit is also at odds with recent Supreme Court precedent.  Under the Ninth Circuit's approach, the defendant asserting nominative fair use bears the burden of negating the likelihood that its use of the plaintiff's mark will confuse consumers.  *See, e.g.*, *Brother Records*, 318 F.3d at 908 n.5 (defendant asserting nominative fair use has burden of proving no likelihood of confusion); *Cairns*, 292 F.3d at 1151; *New Kids*, 971 F.2d at 308 (stating "elements" of nominative fair use "defense" in terms of proof by defendant).  In *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004), the Supreme Court held a defendant cannot bear this burden because the Lanham Act requires the plaintiff to prove likelihood of confusion as an element of its prima facie case of trademark infringement.  *See id.* at 118, 121-22.  Consistent with this holding, the better reasoned opinions considering the nominative fair use of a trademark incorporate the nominative fair use requirements set out by the Ninth Circuit into the traditional, multi-factor analysis of the plaintiff's proof of this element, rather than using the

Ninth Circuit test as a substitute for this analysis.  *See, e.g.*, *Pebble Beach*, 155 F.3d at 546-47;

*Century 21*, 425 F.3d at 246-49 (Fisher, J. dissenting).  They also reject the notion that

nominative fair use is an affirmative defense to liability.  *See Century 21*, 425 F.3d at 246-49

(Fisher, J. dissenting).

      The Tenth Circuit has not yet addressed the Ninth Circuit's nominative fair use doctrine

or the variations on it described above.  Nonetheless, RWJ urges that I hold, as a matter of law,

that its use of Health Grades' marks as alleged in the complaint constitutes a non-infringing,

nominative fair use under the Ninth Circuit's statement of the doctrine, and that I dismiss Health

Grades' trademark infringement claim on this basis.

      Under the authority described above, I find that the nominative fair use doctrine, if

applied here, would supplement this circuit's traditional six-factor test for assessing the

likelihood of confusion element of a plaintiff's prima facie trademark claim.  The defendant does

not bear the burden of proving nominative fair use, and nominative use of a mark is not an

affirmative defense to liability.

      In so holding, I recognize that a divided panel of the Third Circuit has construed the

nominative fair use doctrine as an affirmative defense established by the defendant's proof of the

three elements stated by the Ninth Circuit.  *See Century 21,* 425 F.3d at 222, 228-31.  I am

nonetheless persuaded by Judge Fisher's dissent to this result in *Century 21*, *see id.* at 232-50,

and my own reading of the authority and commentary cited above that nominative fair use is not

an affirmative defense to trademark infringement but rather goes to plaintiff's proof of the

likelihood of confusion element of its claim.  *See also supra* n.15.

Under established Tenth Circuit law, whether RWJ's use of Health Grades' marks is likely to confuse the public is a question of fact. *John Allan*, 540 F.3d at 1138. This is so whether this question is assessed under the standard multi-factor test, the Ninth Circuit's alternative nominative fair use test or some combination thereof. Most courts hold that this fact-intensive question, however analyzed, is not appropriate for determination on a motion to dismiss, but should be determined on summary judgment or at trial. *See, e.g.*, *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412, 414 (S.D.N.Y. 2006) (nominative fair use determination inappropriate on motion to dismiss); *Vulcan Golf, LLC v. Googe Inc.*, 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008) (inappropriate to decide likelihood of confusion on motion to dismiss); *Deere & Co. v. MTD Prods., Inc.*, 2001 WL 435613, *1 (S.D.N.Y. Apr. 30, 2001) (same); *Security Works!, Inc. v. Security World Int'l, Inc.*, 1994 WL 806086, *9 (S.D. Fla. Nov. 14, 1994) (same). It is not surprising, therefore, that the cases cited by RWJ for the proposition that nominative fair use can be decided as a matter of law were all decided on motion for summary judgment. *See* Def.'s Mot. to Dismiss (Doc. 10) at 17 (citing *New Kids*, 971 F.2d 302; *Playboy Enters.*, 279 F.3d 796; *Cairns*, 292 F.3d 1139).

This case is no different. Health Grades has alleged that RWJ's use of its marks "is likely to deceive and create mistake and confusion regarding the source or sponsorship of RWJ's services." Complaint ¶ 28. In fact, the very nature of Health Grades' product, its rankings of healthcare providers, carries with it at least the possibility that consumers will consider RWJ's use of Health Grades' marks to communicate Health Grades' ratings and awards for RWJ an

implied endorsement by Health Grades of RWJ and the services it provides.[14]  Nor can it be said as a matter of law based on Health Grades' allegations, as well as the specific articles and press releases it cites in the complaint as alleged acts of infringement, that RWJ has not "appropriate[d] the cachet" of Health Grades' product by using Health Grades' ratings and awards to promote RWJ's own product.  Therefore, viewing Health Grades' allegations and the referenced articles and press releases in the light most favorable to Health Grades, I cannot find that RWJ's use of Health Grades' marks is a nominative fair use as a matter of law or, more generally, that Health Grades can prove no set of facts in support of the likelihood of confusion element of its trademark infringement claim.  Accordingly, RWJ's motion to dismiss Health Grades' trademark infringement claim is denied.

## III.    Breach of Contract

RWJ argues Health Grades' final claim, for breach of the click-through Limited License, fails to state a claim because it is preempted by federal copyright law.  Section 301(a) of the Copyright Act provides that state law claims are preempted if "(1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."  *Gates*, 9 F.3d at 847 (internal quotation omitted); *see* 17 U.S.C. § 301(a).

---

[14]    Whether this possibility rises to the level of "likelihood" of confusion is an issue to be decided on a more complete factual record.

The parties do not dispute that the work at issue here, Health Grades' ratings and awards, falls within the "subject matter of copyright" as specified in the Act.[15]  Accordingly, the question to be determined is whether the state contract rights asserted by Health Grade are equivalent to any of the exclusive rights granted by section 106 of the Copyright Act.

Section 106 grants to the copyright owner the exclusive right:  (i) to reproduce its work; (ii) prepare derivative works; (iii) distribute copies of the work; (iv) perform the work publicly; and (v) display the work publicly.  17 U.S.C. § 106; *Gates*, 9 F.3d at 847.  A right defined by state law is equivalent to these exclusive rights if it "may be abridged by an act which, in and of itself, would infringe" one of these exclusive rights.  *Gates*, 9 F.3d at 847; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001).  If, however, "the state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action."  *Gates*, 9 F.3d at 847.

To prove copyright infringement, a plaintiff must show:  (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original and hence protected by copyright.  *Feist*, 499 U.S. at 361.  To prove breach of contract under Colorado law,

---

[15]    Whether a work falls "within the subject matter of copyright" as specified in Section 301 is determined by its content and not by whether it is copyrightable.  *See, e.g.*, *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001) (joining three other circuits in holding "the scope of the Copyright Act's subject matter is broader than the scope of the Act's protections"); *United States ex. rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) ("the shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection"); 1 Nimmer § 1.01[B][2] (same).  As a result, the parties' agreement that Health Grades' work is within the subject of copyright has no bearing on their dispute regarding whether all or some of this work is protected under the Copyright Act.

a plaintiff must show:  (1) the defendant entered into an enforceable contract; (2) the plaintiff performed as required by the contract or was justified in not performing; (3) the defendant failed to perform the contract; and (4) damages resulted to the plaintiff.  *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Health Grades asserts that the first element of its breach of contract claim, the existence of a contract, is an extra element that renders this claim qualitatively different from a copyright infringement claim and prevents it from being preempted by the Copyright Act.  In support of this assertion, Health Grades points to the requirements that it prove mutual assent to the terms of the contract and consideration, neither of which is required to prove infringement of one of the exclusive rights granted by the Copyright Act.  If Health Grades is correct in this proposition, then no breach of contract claims would be preempted by the Copyright Act, as all are premised on a promise to perform and thus require proof of this extra element.[16]

---

[16]    Health Grades also relies on *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), in support of its contention that its breach of contract claim, along with all other claims based on contract, are not preempted by the Copyright Act.  Specifically, Health Grades relies on Judge Easterbrook's statement that the rights created by a two-party contract can never be the equivalent of any of the exclusive rights granted by the Copyright Act because "[a] copyright is a right against the world.  Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'" *Id.* at 1454; *see id.* at 1455.  This analysis and the court's reliance on it to find the breach of contract claim before it was not preempted have been strongly criticized, however, *see* 1 Nimmer § 1.01[B][1][a][iii] at 1-20 to -28, 3.04[B][3][a] at 3-34.5 to -34.16 (arguing *ProCD* decision is in error), and even Judge Easterbrook declined to find that all breach of contract actions escape preemption on this basis.  *See ProCD*, 86 F.3d at 1455.  In addition, the *ProCD* court did not consider whether the contract rights asserted between the parties, while narrower because they do not apply against the world, are nonetheless the equivalent of the substantive rights granted by the Copyright Act. *See Trenton v. Infinity Broadcasting Corp.*, 865 F. Supp. 1416, 1428 (C.D. Cal. 1994) (state-created right that is narrower than its copyright counterpart is not qualitatively different so as to preclude preemption); *Rand McNally & Co. v. Fleet Mgmt. Sys., Inc.*, 591 F. Supp. 726, 739 (N.D. Ill. 1983); 1 Nimmer § 1.01[B][1] at 1-11.  As the equivalency determination is the touchstone of the preemption analysis, I do not find the analysis or result in *ProCD* persuasive in

The Tenth Circuit has not yet addressed preemption of breach of contract claims under the Copyright Act.  Many other courts have, however, and while the majority have found the breach of contract actions before them were not preempted, *see Lennon v. Seaman*, 63 F. Supp. 2d 428, 437-38 (S.D.N.Y. 1999) (collecting cases); 1 Nimmer § 1.01[B][1][a][iii] at 1-23 (vast majority of contract claims will survive preemption scrutiny), most have not adopted a blanket rule that all breach of contract claims are immune from preemption.  *See, e.g.*, *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 433 n.5 (8th Cir. 1993); *see generally* 1 Nimmer § 1.01[B][1][a][iii] at 1-23 to -24 ("rule" against preempting contract claims is not categorical; "pre-emption should continue to strike down claims that although denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials").[17]  Instead, most courts have conducted a fact-specific examination of the contract and alleged breach to determine whether the state contract right the plaintiffs seeks to enforce is the equivalent of any of the exclusive rights granted by the Copyright Act.  *See, e.g.*, *Nat'l Car Rental Sys.*, 991 F.2d at 432 (examining contract provision at issue to determine whether it protected rights equivalent to exclusive federal copyright rights); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (finding no preemption because contract promise at issue, the plaintiff's promise not to represent a competing company, was not within the general scope of copyright law); *Acorn Structures, Inc.*

resolving the question before me.

[17]     *But see Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 438 (S.D.N.Y. 1996) (breach of contract claims never preempted because promise by defendant is extra element qualitatively distinguishing these claims from copyright infringement).

27

*v. Swantz*, 846 F.2d 923, 926 (4ᵗʰ Cir. 1988) (finding breach of contract claim not preempted

based on fact-specific analysis of contract); *Selby v. New Line Cinema Corp.*,

96 F. Supp. 2d 1053, 1059-63 (C.D. Cal. 2000) (expressly adopting fact-specific analysis).

Such a case-specific analysis of a breach of contract claim, instead of the mechanical *per se* rule proposed by Health Grades, is compelled by the Copyright Act's preemption provision. Under this provision, state law causes of action are preempted unless the rights they protect are not equivalent to, *i.e.*, are qualitatively different from, the rights granted by the Copyright Act. The "extra element" test followed by the Tenth Circuit and most courts in analyzing preemption under the Act is intended to address this question because, in many instances, the existence of an "extra element" in the state claim makes the claim qualitatively different.  *See, e.g.*, *Gates*, 9 F.3d at 847-48 (breach of duty of trust in trade secrets claim is extra element that qualitatively distinguishes claim from copyright infringement claim).  As numerous courts have acknowledged, however, "[n]ot every 'extra element' of a state law claim will establish a qualitative variance between the rights protected by federal copyright law and those protected by state law."  *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164-65 (1ˢᵗ Cir. 1994); *see Ritchie v. Williams*, 395 F.3d 283, 287 n.3 (6ᵗʰ Cir. 2005) ("existence of an extra element precludes preemption only where the element changes the nature of the action;" quotation omitted); *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1324 (Fed. Cir. 2003) (extra element does not automatically establish qualitative difference between state rights and rights protected by Copyright Act); *Wrench*, 256 F.3d at 456 (state cause of action with extra element is preempted unless "extra element changes the nature of the action so that it is qualitatively different from a copyright infringement action."); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225,

28

229-30 (4th Cir. 1993) (same); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716

(2d Cir. 1992) (same).

A breach of contract action, while including the "extra element" of a contract, can

nonetheless "control nothing other than the reproduction, adaptation, public distribution, etc. of

works within the subject matter of copyright."  1 Nimmer § 1.01[B][1][a][iii] at 1-20.  If the

promise underlying the breach of contract claim "amounts only to a promise to refrain from

reproducing, performing, distributing or displaying the work, then the contract claim is

preempted."  *Wrench*, 256 F.3d at 457; *see Tavormina v. Evening Star Prods., Inc.*,

10 F. Supp. 2d 729, 734 (S.D. Tex. 1998) (finding breach of contract claim preempted to extent

breach was alleged based on allegations that would support copyright infringement claim);

*Selby*, 96 F. Supp. 2d at 1062 (breach of contract claim preempted because it did "not prohibit

any conduct beyond that prohibited by the Copyright Act").[18]  Accordingly, the mere existence

of an enforceable contract is not sufficient to prevent preemption of a breach of contract claim.

*See Wrench*, 256 F.3d at 457-58.  Instead, I must examine the nature of the contract and claimed

---

[18]    As one district court aptly summarized:

The teaching of these cases [regarding Copyright Act preemption of breach of contract claims] is that a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution, or display). However, if the breach of contract claim is based on allegations that the parties' contract creates a right not existing under copyright law -a right based upon a party's contractual promise- and the plaintiff is suing to protect that contractual right, then the claim is not preempted.

*Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 931 (S.D.N.Y. 1996).

breach to determine if the state rights it protects differ qualitatively from the exclusive rights

granted by the federal Copyright Act.[19]

In its complaint, Health Grades alleges RWJ is liable for breach of contract because it is

"making use of the information contained on Health Grades' website beyond the terms" of the

Limited License. Complaint ¶ 33. The improper uses identified in the complaint consist of

RWJ's reproduction, modification and/or distribution of award and ranking information from

Health Grades website in press releases and other marketing efforts without Health Grades'

permission. *See id.* ¶ 11. Each of these uses are within the rights granted by the Copyright Act.

These contractual rights are therefore equivalent to the exclusive rights protected by the

Copyright Act. As a result, Health Grades' breach of contract action is preempted to the extent

that it seeks relief for breach of the Limited License on this basis. *See Wrench*, 256 F.3d at 457;

*Tavormina*, 10 F. Supp. 2d at 734.

Health Grades cites RWJ's use of its website materials for commercial purposes as a

further breach of the Limited License that saves its contract claim from preemption. While the

Limited License indeed prohibits any commercial use of the website materials, the commercial

uses of which Health Grades complains are RWJ's reproduction, modification and distribution of

materials from Health Grades' website. All of these are uses, whether performed in a

---

[19]    In proceeding with this analysis, I note that the Tenth Circuit has cautioned that the preemption analysis should not focus on the conduct alleged to support a state cause of action but should be based on a comparison of the elements of the state action and a copyright infringement claim. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1543 (10th Cir. 1996). The Tenth Circuit has also stated, however, that the "extra element" necessary to avoid preemption must render the state cause of action "qualitatively different from, and not subsumed within, a copyright infringement claim." *Gates*, 9 F.3d at 847. For the reasons described above, the latter determination cannot be made in a breach of contract action without examining the specific breach of contract alleged by the plaintiff.

commercial or non-commercial setting, are among the exclusive rights protected by federal

copyright law.  Thus, even though the state contract rights Health Grades seeks to protect here

may be narrower than those provided by the Copyright Act, because they prohibit these uses for

commercial purposes, there is no extra element that renders these rights qualitatively different

from the rights granted by the Copyright Act.  *See Computer Assocs.*, 982 F.2d at 716 (additional

element that alters claim's scope but not its nature cannot save claim from preemption).  Health

Grades' claim for breach of contract based on RWJ's alleged commercial uses of Health Grades'

materials is therefore preempted by the Copyright Act.

Finally, Health Grades argues RWJ breached a contractual promise not to infringe on

Health Grades' trademarks and that this promise saves its breach of contract claim from

preemption.  This argument is presumably based on the Limited License's prohibition of any use

of Health Grades' trademark and service marks without Health Grades' prior written permission.

Complaint, Exs. A & B, ¶ 3.  Although Health Grades does not expressly allege breach of this

contractual requirement in its complaint, the complaint, read as a whole in the light most

favorable to Health Grades, sufficiently states a breach of contract claim based on RWJ's alleged

trademark infringement.  *See* Complaint ¶¶ 23-28 (alleging trademark infringement), 31

(incorporating preceding allegations in breach of contract claim), 33 (alleging breach as a result

of RWJ using information from Health Grades' website beyond the terms of Limited License).

In order to prove breach of contract on the basis of a contractual promise not to commit

trademark infringement, Health Grades will be required to prove that RWJ's use of Health

Grades' marks was likely to confuse consumers by, for example, implying that Health Grades

endorsed RWJ's services.  *See John Allan Co.*, 540 F.3d at 1138 (stating elements for trademark

infringement).  This requirement is absent from a copyright infringement claim and renders a

claim for breach of a promise not to infringe a trademark qualitatively different from a copyright

infringement claim. *See Nester's Map & Guide Corp. v. Hagstrom Map Co.*, 796 F. Supp. 729,

736 (E.D.N.Y. 1992); *Eliya, Inc. v. Kohl's Dep't Stores*, 2006 WL 2645196, *6 (S.D.N.Y.

Sept. 13, 2006).[20]  Accordingly, Health Grades' breach of contract claim is not preempted to the

extent it is based on RWJ's alleged breach of its contractual promise not to infringe on Health

Grades' marks.

## IV.    Health Grades' Alternative Motion for Discovery

RWJ also contends in its motion to dismiss that it is not liable for two of the eleven

allegedly improper publications identified in Health Grades' complaint because they appeared on

the website rwjhamilton.org, a website RWJ asserts is operated solely by RWJUH at Hamilton,

Inc., a separately incorporated non-profit charitable corporation.  RWJ's Mot. to Dismiss

(Doc. 10) at 3 n.2.  RWJ submitted the declaration of John J. Gantner as evidence that RWJ and

RWJ at Hamilton are separate entities.

RWJ's contention and supporting evidence raise an issue of fact that cannot be decided in

a motion to dismiss.  *See* Fed. R. Civ. P. 12(d); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381

(10th Cir. 1998).  Although I have discretion to convert RWJ's motion into a summary judgment

motion in order to consider RWJ's extra-pleadings material and decide this issue, *see* Fed. R.

Civ. P. 12(d); *Lowe*, 143 F.3d at 1381, I decline to do so.  As a result, Health Grades' Alternative

---

[20]    Nor is there any reason to believe that this state law claim is preempted by federal trademark law.  *See La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 346 (3d Cir. 1974) (federal law generally does not preempt state regulation of trademarks); 3 McCarthy § 22:2 (same).

Rule 56(f) Motion, submitted in the event that I opted to convert RWJ's motion into one for summary judgment, is denied as moot.

### Conclusion

For the reasons stated above, I deny RWJ's motion to dismiss Health Grades' copyright and trademark infringement claims.  I also grant in part and deny in part its motion to dismiss Health Grades' breach of contract claim as described above.  Health Grades' Rule 56 Motion is denied as moot.

Dated this 19th day of June, 2009.

s/John L. Kane_____
John L. Kane, Senior District Judge
United States District Court